## AMERICAN UNIVERSITY v. GARRETT BIBLICAL INSTITUTE.

### Civil Action No. 33904.

United States District Court District of Columbia, Civil Division.

June 2, 1949.

Colladay, Colladay & Wallace and Henry F. Lerch, Washington, D. C., for plaintiff.

Walter M. Bastian and A. K. Shipe, Washington, D. C., for defendant.

LETTS, District Judge.

The issue in this case must be determined upon the facts in evidence, relevant circumstances and fragmentary records. It is necessary to give some consideration to the formative period of the American University. From the time of its incorporation in 1893 and 1895 the university entered upon a program looking to physical and scholastic establishment of the university as a functioning educational institution. The actual opening of the institution as such occurred on May 27, 1914. During the intervening years the university officials were largely concerned with the matter of assembling financial strength, acquiring physical properties and formulating the educational structure of the institution. Many gifts of funds and property were received, a site was acquired and at the time of the opening in 1914 two buildings had been erected and various features of the university's scholastic program had been formulated and published. The officials of the university concluded that the time had arrived to get the institution into operation on some productive basis and the Board of Trustees, on June 6, 1912, authorized appointment of a committee to consider and report to the Board a tentative plan for the opening of the university and the inauguration of academic work. The tentative plan was reported to the Board on December 11, 1912. It was on that day approved in substance. The plan included establishment of a Board of Award and set forth a general plan for fellowships. The plan was read and adopted item by item and as a whole by the Board on May 14, 1913. The

---

plan was first published in the university Courier in its December, 1914, issue. At that time the university was possessed of some funds, a site and two buildings but no faculty. It seems clear that the fellowship plan was adopted as a means of inaugurating educational operations. The university had not developed its educational program where it might supply the educational advantages necessary to a fellowship program.

Prior to 1913 and during the time when the university existed as a corporate body, but not as an active educational institution, and when it was engaged in making its plans, Mrs. Swft had made gifts to the university of at least $27,000 which were placed in the general fund.

Between September 30, 1913, and July 6, 1914, Mrs. Swift paid over to the university in three payments a total of $16,000. This is the sum which the university now holds to support the Gustavus F. Swift Fellowship, established by Annie M. Swift as a memorial of her deceased husband. This was the first fellowship established by the university and the terms and conditions of Mrs. Swift's gifts and the acceptance thereof by the university give rise to the present controversy.

It is agreed that the benefits of the fellowship are available only to graduates of the defendant, the Garret Biblical Institute. The plaintiff contends that it is subject to no other restrictions except that the defendant institute may nominate for plaintiff's consideration graduates of the defendant institute year by year for the benefits of the fellowship. Plaintiff further contends that it is free to administer the fellowship fund as it may determine both as to selection of the recipient and as to the designation of the place of study. The defendant institute maintains that the recipient of the benefits of the fellowship must not only be a graduate of the defendant institute but that the recipient shall be privileged to choose the place of study.

The controversy became acute when in the year 1942 the Board of Trustees of the university by resolution determined that recipients of the benefits of the fellowship should thereafter study at the university. The defendant institute places much emphasis upon the fact that throughout the years and until the action just stated was taken by the Board of Trustees of the university it had been the practice of the university to permit recipients of the fellowship to study elsewhere than at the university. It will be noted that the administration of the fellowship fund was not entirely uniform. Awards for study abroad were made in two instances, one in 1922 and the other in 1929. The award was once made without a nomination from the defendant institute; and in one instance the award was divided between two students over the strenuous objections of the defendant institute. On another occasion a dispute arose between the plaintiff university and the defendant institute as to whether enjoyment of the benefits of the fellowship might be postponed for a year from the time of the award. In the case of each dispute the plaintiff university asserted its authority and announced the award according to the judgment of its Board of Trustees. Little, if any, weight can be given to this administrative practice when we realize that the fellowship was created at a time when the university was without facilities to instruct and that its educational program was fully developed in 1942 when the university was thoroughly organized, with a College of Arts and Sciences adequately housed, with a graduate and undergraduate program, a School of Law, and a division of professional institutes serving approximately 4500 students a year.

The records of the university constitute the best source of information. It is true that Mrs. Swift considered the suggestion of a foreign fellowship but it is quite clear that this suggestion was discarded. The defendant institute does not now claim that the fellowship as established was for foreign study. The most persuasive record is the letter of Dr. Stone, dated October 9, 1913, who solicited Mrs. Swift for her gifts. In that letter he states that the total $16,000 should become a fellowship in perpetuity **for the Garrett Biblical Institute, to be** called in memory of her husband "The

Gustavus F. Swift Fellowship." On February 17, 1915, President Stewart of the defendant institute in a letter addressed to Chancellor Hamilton of the university wrote "as I understand it we were to nominate, you were to confirm and to direct the subsequent work of the man selected." At the trial Dr. Smith, president of the defendant institute testified that the university awards the fellowship and the Garrett Institute does not designate where these men are to go.

The case is devoid of any evidence, documentary or otherwise, which indicates that the defendant institute or its nominees are authorized to determine where the recipients of the award are to study. No restrictions are found with respect to the administration of the fellowship by the university, except that the awards are to be made to graduates of the defendant institute. The matter of administration seems to have been left entirely, with that exception, to the university and it was well within its rights when its Board of Trustees passed the resolution requiring persons to whom awards were made to study at the university. The deep interest which Mrs. Swift had in the university is abundantly shown in the evidence and it may not be presumed that she intended that the defendant institute should, in any wise, be intrusted with the administration of the fellowship, except to nominate its graduates for the consideration of the university in making the awards.

It is somewhat difficult to understand what justiciable rights the defendant institute has in the matters in issue. It was not a party to any transaction leading to the establishment of the fellowship and has performed a gratuitous service in nominating its graduates. It has no other or further interest, duty or authority. A controversy such as is here exhibited might more naturally arise between a graduate of the defendant institute and the university if there was divergence of views as to his rights under an award.

Counsel for plaintiff will present for settlement findings of fact, conclusions of law and a judgment form granting the relief for which plaintiff prays.